IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES GREULICH,

           Plaintiff,

    v.

CITY OF PORTLAND,

           Defendant.

Case No. 3:21-cv-01135-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Plaintiff Charles Greulich ("Greulich") filed this action against the City of Portland (the "City"), asserting constitutional claims under 42 U.S.C. § 1983 and state law claims for whistleblower retaliation and discrimination. The City moves to dismiss Greulich's First Amendment claim pursuant to FED. R. CIV. P. 12(b)(6). (ECF No. 18.)

      The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636. For the reasons explained below, the Court grants the City's motion to dismiss.

///

///

PAGE 1 – OPINION AND ORDER

## BACKGROUND[1]

Greulich began working for the Portland Police Bureau ("PPB"), a division of the City, in late 2007. (First Amend. Compl. ("FAC") ¶¶ 5, 13.) Greulich was promoted to Sergeant in 2014 and assigned to the PPB Detectives Division in January 2017. (*Id*. ¶ 15.) In mid-May 2018, Lieutenant David Abrahamson ("Abrahamson") was transferred to the PPB Detectives Division as Greulich's direct supervisor. (*Id*. ¶¶ 6, 16.)

In June 2018, Abrahamson told Greulich that one of Greulich's subordinates, Detective James Lawrence ("Lawrence"), was engaging in inappropriate conduct with a PPB crime analyst (the "Analyst"). (*Id*. ¶ 21.) Abrahamson informed Greulich that Lawrence was not allowed to communicate or work directly with the Analyst and therefore all communications between Lawrence and the Analyst would need to go through Greulich. (*Id*. ¶ 23.) Shortly thereafter, Lawrence contacted Greulich to ask why Abrahamson wanted to meet with him, and he asked Greulich if he should take a union representative. (*Id*. ¶ 26.) Greulich told Lawrence that he should take a union representative, and that Abrahamson had made a "Rule 202"[2] allegation against Lawrence. (*Id*.)

Greulich decided to investigate Abrahamson's allegation against Lawrence, and spoke to the Analyst's supervisor, Nicole Wrigley ("Wrigley"). (*Id*. ¶ 29.) Wrigley informed Greulich that

---

[1] The Court assumes the facts Greulich alleges in the First Amended Complaint to be true for the purpose of reviewing the present motion. *See Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint.").

[2] According to Greulich's FAC, a "Rule 202" violation references the PPB Human Resources Administrative Rule 2.02 which requires a supervisor "who know[s] or has reason[s] to know that discrimination, harassment, racism, or retaliation may be occurring must do the following: 1) take immediate action to stop [the actions]; and 2) report the incident to [the Bureau of Human Resources]." (*Id*. ¶ 31.)

PAGE 2 – OPINION AND ORDER

she was not aware of any complaints that the Analyst had against Lawrence, and that in Wrigley's view the Analyst had issues with Abrahamson. (*Id*. ¶ 30.) Greulich's discussion with Wrigley led Greulich to believe that Abrahamson was making a false allegation against Lawrence. (*Id*. ¶ 31.) In accordance with his responsibilities to report misconduct, Greulich reported Abrahamson's "false allegations" against Lawrence to the Assistant Chief of the Detectives Division, Jami Resch ("Resch"). (*Id*.) Greulich's report to Resch was outside the chain of command, but he made the report because he did not trust that his superiors, Lieutenant Rick Deland ("Deland") and Commander David Hendrie ("Hendrie"),[3] would properly investigate Abrahamson.[4] (*Id*. ¶ 32).

On July 10, 2018, Greulich, Resch, Wrigley, the Analyst, and a representative from the City's Bureau of Human Resources met and discussed Abrahamson's allegation of misconduct between the Analyst and Lawrence, determined that no issue existed, and decided that Lawrence could resume contact and communication with the Analyst. (*Id*. ¶ 35.) Resch then passed the information about Greulich's concerns and the outcome of the discussion "down the chain of command" to Deland and Hendrie. (*Id*. ¶ 36.) Deland "dressed [Greulich] down" for going outside the chain of command. (*Id*. ¶ 38.) On August 1, 2018, Hendrie also "dressed down" Greulich and emailed Greulich a finding from an older closed investigation into Lawrence in order to, in Greulich's view, convince Greulich that Lawrence (rather than Abrahamson) was the problem. (*Id*. ¶ 41.) Greulich reviewed the situation described in Hendrie's email and determined

---

[3] Hendrie was on a leave of absence from June 29, 2018, util July 27, 2018, and Deland was the Acting Commander during Hendrie's absence. (*Id*. ¶ 20.)

[4] Greulich explains that his direct superior was Abrahamson, but because Abrahamson "was the one who made what [Greulich] believed was a false report of misconduct by Lawrence, [Greulich] decided to take his concerns to Resch." (*Id*. ¶ 32.) However, Greulich does not explain why, at that time, he did not trust Hendrie or Deland.

that the discipline surrounding the older incident was "not appropriate." (*Id*. ¶ 41.) The meeting with Hendrie, along with Greulich's review of the prior discipline against Lawrence, led Greulich to believe that "Hendrie had a personal and professional issue with Lawrence." (*Id*.) Greulich then informed Lawrence that he did not believe that any complaint Lawrence intended to make about Abrahamson to Hendrie would be given a fair evaluation.[5] (*Id*. ¶ 42.)

Despite Greulich's warning, on August 2, 2018, Lawrence filed a complaint against Abrahamson and Hendrie for retaliation, discrimination, and untruthfulness. (*Id*. ¶ 43.) On August 21, 2018, Greulich was interviewed by the Portland Independent Police Review ("IPR") as a witness in Lawrence's claim against Abrahamson and Hendrie. (*Id*. ¶ 44.)

In late September 2018, Abrahamson returned from a twelve-week training leave. (*Id*. ¶ 45.) The day following Abrahamson's return, he was seen having coffee with Hendrie. (*Id*. ¶ 47.) After Abrahamson twice canceled Greulich's annual evaluation, Greulich contacted Internal Affairs to inquire whether Abrahamson knew that he was the subject of an investigation. (*Id*. ¶ 49.) Internal Affairs confirmed that Abrahamson knew he was the subject of an investigation but was not yet aware of the allegation or who had made the complaint. (*Id*. ¶¶ 49, 52.)

On September 27, 2018, Abrahamson met with Greulich and issued an unsatisfactory performance evaluation. (*Id*. ¶ 50.) In Greulich's view, Abrahamson issued the unsatisfactory review because he had learned about the conversations between Greulich and Lawrence about Abrahamson's allegation concerning the Analyst, and because Abrahamson knew Greulich had spoken to Resch about Abrahamson's untruthfulness. (*Id*. ¶¶ 50-51.) Greulich complained about

---

[5] This communication between Greulich and Lawrence is the speech at issue in this motion.

the unsatisfactory performance evaluation to Internal Affairs and was interviewed as part of that investigation on November 14, 2018. (*Id.* ¶ 52.)

The next day, Lieutenant Craig Morgan ("Morgan") lodged several complaints with Captain Cliff Bacigalupi of PPB Internal Affairs about Greulich, including, *inter alia*, violations of PPB directives related to "Professional Conduct and Courtesy," "Dissemination of Information," "Insubordination," and "Untruthfulness." (*Id.* ¶ 54.) Morgan worked in the Professional Standards Division—part of Internal Affairs—and was also the President of the Portland Police Commanding Officers' Association, of which Abrahamson was a member. (*Id.* ¶¶ 8, 56.)

On November 19, 2018, Greulich was made aware of Morgan's allegations against him, and that the allegations related to Greulich's reporting of Abrahamson's false allegation against Lawrence. (*Id.* ¶ 60.) PPB Internal Affairs Investigator James Gowin notified Greulich that one of the allegations was that "[Greulich] disobeyed an order from Commander Dave Hendrie when he shared information relating to a personnel matter to Detective James Lawrence[.]" (*Id.* ¶ 62.)

On February 21, 2019, newly transferred Commander of the Detectives Division Jeff Bell ("Bell") determined that the findings of the Internal Affairs investigation into Greulich warranted discipline. (*Id.* ¶¶ 64-66.) The City and PPB provided Greulich with a memorandum of proposed discipline, which included a finding that only one of Morgan's complaints was sustained: "disobeying an order not to disclose information." (*Id.* ¶ 68.) The City and PPB issued a one-week disciplinary suspension without pay, after which Greulich was given the choice of going back to a precinct as a Sergeant or going to the Transit Division. (*Id.* ¶ 71.)

///

///

PAGE 5 – OPINION AND ORDER

## DISCUSSION

### I.   STANDARD OF REVIEW

To survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (simplified).

### II.   ANALYSIS

The City moves to dismiss Greulich's First Amendment claim on the ground that the First Amendment does not protect a public employee's speech about private matters.[6] (Def.'s Mot. to Dismiss ("Def.'s Mot.") at 6-10.) The Court finds that as a matter of law, Greulich's speech at issue is not entitled to First Amendment protection because the speech did not regard a matter of public concern.

#### A.   First Amendment Claim

Greulich alleges that the City "disciplined [him] for disobeying an order from Hendrie when he shared information relating to a personnel matter with Lawrence." (FAC ¶ 73.) He asserts that the City's discipline of him for his statements to Lawrence violated the First

---

[6] The City refers to Greulich's First Amendment "claims," but it appears the City is only moving to dismiss Count I of the FAC, titled "Violation of the Right to Free Speech." (FAC ¶¶ 72-89.)

Amendment because he was speaking as a private citizen on a matter of concern about truthfulness at PPB. (FAC ¶ 78-79, 82, 85.)

### 1. Relevant Test

Section 1983 provides a private right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) a federal constitutional or statutory right was violated; and (2) the alleged violation was committed by a person acting under the color of state law. *See Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

"The First Amendment shields a public employee if he speaks as a citizen on a matter of public concern." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (citation omitted). "However, 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

In the Ninth Circuit, courts "follow a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech."[7] *Id.* (citing *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). The Court looks to "(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action . . . (4) whether the state had an adequate

---

[7] The Ninth Circuit later clarified that "by 'sequential,' we mean only that all the factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case." *Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013).

justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.* (citations omitted).

The City argues that the First Amendment does not protect Greulich's speech here because the speech at issue was "neither on a matter of public concern nor spoken as a private citizen." (Def.'s Mot. to Dismiss ("Def.'s Mot.") at 1.) The Court finds that Greulich's speech was not entitled to First Amendment protection because it related to a personnel matter, not a matter of public concern, and therefore the Court does not reach the question of whether Greulich spoke as a private citizen or a public employee.[8]

### 2.  Matter of Public Concern

"Whether an employee's speech addresses a matter of public concern is a pure question of law that must be determined 'by the content, form, and context of a given statement, as revealed by the whole record.'" *Ritchie v. Staton*, No. 03:17-cv-00844-AC, 2018 WL 2276241, at *3 (D. Or. Mar. 28, 2018) (citing *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1069 (9th Cir. 2012) and quoting *Connick v. Myers*, 461 U.S. 138, 147-48 & n.7 (1983)), *findings and recommendation adopted* 2018 WL 2248450 (D. Or. May 16, 2018). "Out of these three factors, the content of the speech is generally the most important." *Id.* (simplified).

"The Ninth Circuit does not apply a rigid, multi-factor analysis to determine what speech is of public concern; rather, courts perform a 'generalized analysis of the nature of the speech,' to place the speech on 'a continuum ranging from matters of public concern to matters of purely

---

[8] "[W]hether the plaintiff spoke as a public employee or a private citizen [] is a mixed question of fact and law[.]" *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1129 (9th Cir. 2008); *see also Eng*, 552 F.3d at 1071 ("While the question of the scope and content of a plaintiff's job responsibilities is a question of fact, the ultimate constitutional significance of the facts as found is a question of law.") (simplified).

personal concern.'" *Id.* (quoting *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1103 (9th Cir. 2011)). "On one end of that spectrum is speech that relates to matters of concern to the community, including political or social matters [and o]n the other end are individual grievances and personnel disputes that are irrelevant to the public's evaluation of government agencies." *Id.* (simplified). "In a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern." *Id.* (citing *Desrochers v. City of San Bernadino*, 572 F.3d 703, 710 (9th Cir. 2009) and quoting *Johnson v. Multnomah Cnty.*, 48 F.3d 420, 425 (9th Cir. 1995)).

For the reasons discussed below, the Court finds that Greulich's speech to Lawrence regarding Greulich's concerns about Hendrie and Abrahamson, which referenced the prior personnel matter that Hendrie had disclosed to Greulich, was not a matter of public concern.[9]

### a.  Content

Greulich claims that the City's disciplinary suspension for "disobeying an order not to disclose information" was retaliation related to protected speech. (FAC ¶¶ 73-89.) Greulich alleges in the FAC that the content of his speech to Lawrence—the subject of the discipline— was about "shar[ing] information related to a personnel matter" based on Greulich's belief that

---

[9] Greulich acknowledges that his "report of misconduct by Abrahamson to [Resch] likely was in the scope of his responsibilities . . . and therefore would not be protected speech [and] Plaintiff consents to striking paragraph 74 [of the FAC.]" (Pl.'s Resp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") at 18.) The allegation Greulich strikes is that "Hendrie dressed down Plaintiff for going to Resch about Abrahamson's lying . . . punish[ed] Plaintiff for engaging in protected whistleblower activity [and] retaliate[d] by telling Plaintiff that he isn't sure there is a place on his team for Plaintiff." (FAC ¶ 74.) Accordingly, the Court strikes the allegations in paragraph seventy-four of the FAC and does not consider those allegations in deciding this motion.

"any complaint Lawrence made about Abrahamson's false allegations against Lawrence was going to fall on deaf ears and not be investigated thoroughly" by Hendrie.[10] (FAC ¶¶ 73, 75-76.) Greulich now argues that because he believed that "Hendrie had a personal and professional issue with Lawrence[,]" his communication with Lawrence was a "matter of public concern because Abrahamson was not being truthful." (FAC ¶ 79.) The City responds that the facts here "show a conversation between co-workers . . . complaining about their mutual commanding officer[,]" and argues that "[t]his is not the kind of public matter of broad concern that the First Amendment seeks to preserve[, rather] it is a purely personal one[.]" (Def.'s Mot. at 8.) The Court agrees.

Speech addresses a matter of public concern when its content involves information that is necessary "to enable the members of society to make informed decisions about the operation of their government." *Desrochers*, 572 F.3d at 710. "Under this standard, internal personnel disputes do not involve matters of public concern, while allegations of conduct amounting to actual or potential wrongdoing or breach of public trust do." *Ritchie*, 2018 WL 2276241, at *3 (simplified). "The *content* of the communication must be of broader societal concern [and] our focus must be upon whether the public or community is likely to be *truly interested* in the particular expression, or whether it is more properly viewed as essentially a private grievance." *Desrochers*, 572 F.3d at 713 (simplified). Here, the Court cannot conclude that the public would be truly interested in a "personal and professional issue" between Abrahamson and Lawrence. *See id.* ("[W]e cannot say that the public would be truly interested that two police sergeants believed their supervisor was a 'micro-manager,' 'autocratic' and 'controlling,' or even that he

---

[10] Greulich also characterizes his speech as "sp[eaking] up to protect a fellow officer in the same union from being subjected to unwarranted scrutiny and retaliation from command." (Pl.'s Resp. at 4.)

dressed them down in front of their colleagues and neighboring police forces."); *see also*

*Garcetti*, 547 U.S. at 420 ("Underlying our cases has been the premise that while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" (quoting *Connick*, 461 U.S. at 154)).

Greulich challenges the City's characterization of his conversation with Lawrence by asserting that "there is no conceivable situation where police corruption, retaliation by senior command staff, and dishonesty of senior command staff is not a matter of public concern." (Pl.'s Resp. at 7.) Greulich seeks to recharacterize his warning to Lawrence that any complaint about Abrahamson made to Hendrie would not be taken seriously (as he alleges in the FAC), into a communication to Lawrence that "the Commander . . . [and] Lieutenant of the Portland Police Detectives Division are being untruthful in making serious accusations of harassment against a subordinate officer, then covering up the untruthful allegations by attempting to sway [Greulich's] opinion of Lawrence." (*Id.*) In analyzing the content of the speech at issue, however, "[w]e look to what the employee actually said, not what was said after the fact." *Desrochers*, 572 F.3d at 711 (rejecting the "post hoc characterizations" of a plaintiff's grievances concerning a "personality dispute" into grievances concerning competency, preparedness, efficiency, and morale within the police department as a whole); *see also Hernandez v. City of Phoenix*, 432 F. Supp. 3d 1049, 1060 (D. Ariz. 2020) (rejecting the plaintiff's characterization of his anti-Islamic Facebook memes as related to "issues of assimilation, federal spending and media coverage" because "the Court is not required to accept [p]laintiff's characterization of his posts" and finding that by "[l]ooking at the true content . . . the posts are more appropriately seen as relating to a personal grudge").

///

PAGE 11 – OPINION AND ORDER

Greulich alleges in the FAC that his communication with Lawrence was about Greulich's own belief that Abrahamson had a "personal and professional issue" with Lawrence and that the "public is interested in ensuring" that "PPB officers, especially command staff, are truthful and do not engage in retaliatory activity because of personal grudges." (FAC ¶¶ 41, 75, 104.) Only in his response to the City's motion does Greulich transform the topic of the communication into "police corruption." (Pl.'s Resp. at 7-8.) Even if the Court were to accept that the communication between Greulich and Lawrence implicated concerns about corruption more generally, "the fact that speech contains 'passing references to [a matter of public concern,] incidental to the message conveyed' weighs against a finding of public concern." *Desrochers*, 572 F.3d at 711 (citing *Robinson v. York*, 566 F.3d 817, 812 (9th Cir. 2009)).

Greulich was clear in the FAC that he "informed Lawrence that he did not believe that any complaint Lawrence made about Abrahamson to Hendrie would be given a fair evaluation" because Greulich believed "Hendrie had a personal and professional issue with Lawrence." (FAC ¶¶ 41-42.) Whether or not Hendrie had an "issue" with Lawrence is not information that the public would need to make an informed decision about the operation of the PPB. *See McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) ("Speech by public employees may be characterized as not of 'public concern' when it is clear that such speech deals with individual personnel disputes and grievances and that the information would be of no relevance to the public's evaluation of the performance of governmental agencies."); *see also Lalack v. Oregon*, No. 3:11-cv-01285-BR, 2013 WL 819789, at *16 (D. Or. Mar. 5, 2013) (finding that the plaintiff's report of an alleged breach of confidentiality was not a matter of public concern because "an alleged violation of . . . internal policies" "is the kind of nonpublic complaint that the *Desrochers* court concluded was not a matter of public concern").

PAGE 12 – OPINION AND ORDER

The Court finds the content of Greulich's speech for which he was disciplined was not a matter of public concern.

### b.     Form

The Court must also consider the form of Greulich's communication to Lawrence to identify whether the speech was of public concern. *See Weeks v. Bayer*, 246 F.3d 1231, 1235 (9th Cir. 2001). The Ninth Circuit has recognized that "a limited audience weighs against a claim of protected speech." *Desrochers*, 572 F.3d at 714; *see also Clairmont*, 632 F.3d at 1104 ("[W]hen speech takes the form of an internal employee grievance, and is not presented to the public, the form cuts against a finding of public concern.") (quotation omitted).

Greulich argues—and the Court agrees—that "express[ing] his views inside his office, rather than publicly, is not dispositive." (Pl.'s Resp. at 5, quoting *Garcetti*, 547 U.S. at 420). However, Greulich is incorrect in claiming that "the mere fact that [he] never went to the press or made a comment in a public forum is not relevant[.]" (*Id.*)

"The relevance of non-disclosure to the public tracks the Supreme Court's acknowledgment that 'the public's interest in receiving the well-informed views of government employees engaging in civic discussion' is one of the primary purposes of its First Amendment retaliation jurisprudence." *Desrochers*, 572 F.3d at 714 (quoting *Garcetti*, 547 U.S. at 419). "Public speech is more likely to serve the public values of the First Amendment [while p]rivate speech motivated by an office grievance is less likely to convey the information that is a prerequisite for an informed electorate." *Id.* (citation omitted); *see also McKinley*, 705 F.2d at 1114 (finding speech that deals with "individual personnel disputes and grievances" that "would be of no relevance to the public's evaluation of the performance of governmental agencies" generally is not of public concern).

Here, because Greulich's speech was a one-on-one verbal conversation with Lawrence concerning Greulich's own opinion of Hendrie's "issues" with Lawrence, the form of the speech weighs against a finding of public concern. *See Desrochers*, 572 F.3d 703 ("Because the speech at issue took the form of internal employee grievances which were not disseminated to the public," the form of the speech "cuts against a finding of public concern"); *Turner v. City and Cnty. of San Francisco*, 788 F.3d 1206, 1211 (9th Cir. 2015) (finding that the plaintiff's complaints about labor practices were "potentially significant in their implications" but nevertheless held the speech was not a matter of public concern in large part because the plaintiff voiced his grievance only internally, rather than speaking to the press or the city's board of supervisors); *Lisner v. City of Huntington Park*, No. EDCV1902009VAPSPX, 2020 WL 12893774, at *9 (C.D. Cal. Oct. 22, 2020) (finding the form of the plaintiff's verbal report about his superior's alleged misconduct "to a small or limited audience" in "a closed, non-public hearing . . . weigh[ed] against a claim of protected speech" (citing *Desrochers*, 572 F.3d at 714)).

          **c.**     **Context**

"Context addresses whether the purpose of the speech was to bring light to actual or potential wrongdoing or a breach of the public trust, or was merely motivated by dissatisfaction with one's employment situation." *Ritchie*, 2018 WL 2276241, at *4 (citing *Desrochers*, 572 F.3d at 714). Stated differently, the Court must determine why the employee spoke. *See Desrochers*, 572 U.S. at 715 (noting that "[t]he question of whether the speech was made to further some purely private interest is relevant to that inquiry . . . as is a determination of whether the speech was made in the context of a workplace power struggle") (simplified).

///

///

///

PAGE 14 – OPINION AND ORDER

The context of Greulich's "warning" to Lawrence "about how Lawrence's complaint about Abrahamson would be received and handled by command" weighs against a finding of public concern. For his own reasons, Greulich believed that Hendrie had "personal issues" with Lawrence such that Hendrie would not properly handle any complaints made by Lawrence about Abrahamson. In warning Lawrence about his belief, Greulich disclosed a prior personnel matter about Lawrence that Greulich was not authorized to disclose, and that was the basis for Greulich's discipline. The Court finds that the conversation at issue involved an internal power struggle, and the context of the speech weighs against a finding of public concern. *See Connick*, 461 U.S. at 146 ("We hold . . . that when a public employee speaks . . . upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."); *see also Clairmont*, 632 F.3d at 1104 ("When a public employee's contested speech occurs in the context of an internal power struggle or personal employment grievance, this will militate against a finding of public concern.").

The Court finds that the content, form, and context of Greulich's speech demonstrate that his speech was not related to a matter of public concern. Therefore, the Court grants the City's motion to dismiss Greulich's First Amendment claim. *See Dahlia*,735 F.3d at 1067 n.4 (clarifying that failure to meet any one of the five *Eng* factors is "fatal to the plaintiff's case") (citing *Desrochers*, 572 F.3d at 709-19); *see also Ritchie*, 2018 WL 2276241, at *9 (granting motion to dismiss the plaintiff's First Amendment claim because the plaintiff "did not act as a private citizen speaking on a matter of public concern"); *Lalack*, 2013 WL 819789, at *14 ("If [the p]laintiff's speech 'cannot be fairly characterized as constituting speech on a matter of public concern,' there is not any First-Amendment violation regardless of the reason for her

discharge." (citing *Connick*, 461 U.S. at 147)); *Carroll v. Cal. ex rel. Cal. Comm'n on Teacher Credentialing*, No. 2:13-CV-00249-KJM, 2013 WL 4482934, at *10 (E.D. Cal. Aug. 19, 2013) (dismissing the plaintiff's First Amendment claim where the speech at issue "d[id] not satisfy *Eng's* first step" because it did not involve a matter of public concern).

## CONCLUSION

For the reasons set forth above, the Court GRANTS the City's motion to dismiss Greulich's First Amendment claim (Count I).

DATED this 24th day of May, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge